**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>STATE OF NEW HAMPSHIRE,<br><br>               Plaintiffs,<br><br>      vs.<br><br>HARVARD PILGRIM HEALTH CARE, INC.<br><br>and<br><br>HEALTH PLAN HOLDINGS, INC.,<br><br>            Defendants. | Civil Action No.: 1:20-cv-01183-JD |

**FINAL JUDGMENT**

WHEREAS, Plaintiffs, United States of America and the State of New Hampshire, filed their Complaint on December 14, 2020;

AND WHEREAS, Plaintiffs and Defendants, Harvard Pilgrim Health Care, Inc. and Health Plan Holdings, Inc. (f/k/a Tufts Health Plan, Inc.), have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to make a divestiture to remedy the loss of competition alleged in the Complaint;

1

AND WHEREAS, Defendants represent that the divestiture and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

AND WHEREAS, the resolution of the interests of the State of New Hampshire through its Consumer Protection and Antitrust Bureau pursuant to Section 7 of the Clayton Act and the state antitrust law, N.H. Rev. Stat. Ann. Ch. 356, does not impact the jurisdiction or authority of the New Hampshire Insurance Department to pursue any interest authorized by law.

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.  DEFINITIONS

As used in this Final Judgment:

A.      "Harvard Pilgrim" means Defendant Harvard Pilgrim Health Care, Inc., a Massachusetts nonprofit corporation with its headquarters in Wellesley, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Health Plan Holdings" means Defendant Health Plan Holdings, Inc. (f/k/a Tufts Health Plan, Inc.), a Massachusetts nonprofit corporation with its headquarters in Watertown, Massachusetts, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Tufts Health Freedom Plan" means Tufts Health Freedom Plans, Inc., its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Acquirer" means UnitedHealth Group, Inc. or another entity approved by the United States of America in its sole discretion to whom Defendants divest the Divestiture Assets.

E.      "CRC" means community rating by class, which refers to the sale of commercial group health insurance to private employers with between 51 and 99 full-time eligible employees.

F.      "Divestiture Assets" means:

1.      All Healthcare Provider Contracts;

2.      All of Defendants' rights, title, and interests in and to all property and assets, tangible and intangible, wherever located, of Tufts Health Freedom Plan, including:

a.  All licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations issued or granted by any governmental organization, and all pending applications or renewals;

b.  All real property interests, including leases; and

c.  All contracts, other than Healthcare Provider Contracts, to which Tufts Health Freedom Plan is a party, including contractual rights, membership, customer contracts, and all other agreements, commitments, and understandings.

3.      All current and historical member records for the health plans that Tufts Health Freedom Plan offers or has offered, including contact information, claims information, clinical information, all underlying electronic data, and all files that contain any current or historical member records for those health plans;

3

4.      All provider-furnished data related to members of health plans that Tufts Health Freedom Plan offers or has offered and all files that contain any provider-furnished data related to those health plans; and

5.      An exclusive license to use the "Tufts Health Freedom," "Tufts Health Freedom Insurance Company," and "Tufts Health Freedom Plan(s)" brand names, and all associated trademarks, service marks, and service names, in New Hampshire from the date on which the Divestiture Assets are divested to Acquirer through December 31, 2021.

G.      "Granite Healthcare" means Granite Healthcare Asset Holding Company, LLC, its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures as of July 1, 2020, and their members, directors, officers, managers, agents, and employees. Its members include Catholic Medical Center, Concord Hospital, Southern New Hampshire Health System, Wentworth-Douglass Hospital, and Delta Dental Plan of New Hampshire, Inc. d/b/a Northeast Delta Dental.

H.      "Granite Healthcare Provider Contracts" means the contracts with Catholic Medical Center, Concord Hospital, Southern New Hampshire Health System, and Wentworth-Douglass Hospital, and any other hospitals that had an ownership interest in Granite Healthcare as of July 1, 2020, to which Tufts Health Freedom Plan is a signatory.

I.      "Healthcare Provider Contracts" means contracts with healthcare providers to which Tufts Health Freedom Plan is a signatory, including the Granite Healthcare Provider Contracts.

J.      "Including" means including but not limited to.

K.      "Recruitment Period" means the period of 60 calendar days from the date on which the Divestiture Assets are divested to Acquirer.

4

L.     "Regulatory Approvals" means any approvals or clearances pursuant to Health Plan Holdings' November 16, 2020 Form A filed with the Massachusetts Division of Insurance that are required for the proposed combination of Health Plan Holdings and Harvard Pilgrim to proceed.

M.     "Relevant Personnel" means every employee of Health Plan Holdings based in or assigned to New Hampshire in calendar year 2020 who (1) holds the title of President; Senior Executive Assistant; Public Policy Manager; Small and Large Group Account Executive; Senior Account Executive; Sales and Account Associate; Small Group Account Manager; Key Account Manager; Large Group Account Manager; Senior Manager, Strategic Marketing; Senior Provider Group Manager; or Small Group Account Manager; and (2) has responsibility for Small Group or CRC for Tufts Health Freedom Plan. The United States, in its sole discretion, will resolve any disagreement regarding which employees are Relevant Personnel.

N.     "Run-out Services" means services that are customarily provided following an operational transfer of health insurance plans and that require Defendants' ongoing support, including claims processing, claims reporting, administrative support, and routine investigations necessary for claims processing.

O.     "Small Group" means the sale of commercial group health insurance to private employers with between 1 and 50 full-time eligible employees.

P.     "United" means UnitedHealth Group, Inc., a Delaware corporation with its headquarters in Minnetonka, Minnesota, its successors and assigns, and its subsidiaries, including its subsidiary United Healthcare Services, Inc., divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

### III.     APPLICABILITY

A.    This Final Judgment applies to Harvard Pilgrim and Health Plan Holdings, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.    If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer.

### IV.     DIVESTITURE

A.    Defendants are ordered and directed, within 30 calendar days after the Court's entry of the Asset Preservation Stipulation and Order ("Stipulation and Order") in this matter, to divest the Divestiture Assets in a manner consistent with this Final Judgment to United or to another Acquirer acceptable to the United States, in its sole discretion, after consultation with the State of New Hampshire.

B.    If Defendants have not received all Regulatory Approvals within 30 calendar days after the Court's entry of the Stipulation and Order in this matter, the time period under Paragraph IV.A will be extended until 5 calendar days after all Regulatory Approvals are received. This extension allowed for securing Regulatory Approvals shall be no longer than 60 calendar days past the time period provided in Paragraph IV.A, unless the United States, in its sole discretion, consents to an additional extension.

C.    Defendants must use their best efforts to divest the Divestiture Assets as expeditiously as possible and may not take any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

D.      Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets, and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business to compete effectively in Small Group and CRC in New Hampshire and that the divestiture to Acquirer will remedy the competitive harm alleged in the Complaint.

E.      The divestiture must be made to an Acquirer that, in the United States' sole judgment, after consultation with the State of New Hampshire, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in Small Group and CRC in New Hampshire.

F.      The divestiture must be accomplished so as to satisfy the United States, in its sole discretion, after consultation with the State of New Hampshire, that none of the terms of any agreement between Acquirer and Defendants gives Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively in Small Group and CRC in New Hampshire.

G.      Defendants must permit Acquirer to have reasonable access to personnel and access, subject to customary confidentiality assurances, to any and all financial, operational, or other documents and information regarding the Divestiture Assets customarily provided as part of a due diligence process.

H.      In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than United, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that the Divestiture Assets are

7

being divested in accordance with this Final Judgment and must provide that person with a copy

of this Final Judgment. Defendants must offer to furnish and promptly provide to all prospective

Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets that are customarily provided in a due-diligence process,

including all information and documents provided to United; *provided, however*, that Defendants

need not provide information or documents subject to the attorney-client privilege or work-

product doctrine. Defendants must make all information and documents available to the United

States at the same time that the information and documents are made available to any other

person.

      I.     Defendants must cooperate with and assist Acquirer in identifying Relevant

Personnel and, at the option of Acquirer, in hiring any Relevant Personnel, including:

      1.     No later than five business days following the filing of the Complaint in

this matter, Defendants must provide to Acquirer and Plaintiffs, a list of all Relevant Personnel.

      2.     Following the filing of the Complaint in this matter, within seven business

days following receipt of a request by Acquirer or the United States, Defendants must provide to

Acquirer and Plaintiffs, additional information related to Relevant Personnel, including name,

job title, reporting relationships, past experience, responsibilities, training and educational

history, relevant certifications, job performance evaluations. Defendants must also provide to

Acquirer current, recent, and accrued compensation and benefits, including most recent bonuses

paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention

agreement or incentives, and any other payments due, compensation or benefits accrued, or

promises made to Relevant Personnel. If Defendants are barred by any applicable laws from

providing any of this information, Defendants must provide, within seven business days

following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

3.     At the request of Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

4.     Defendants must not interfere with any effort by Acquirer to employ any Relevant Personnel. Interference includes offering to increase the compensation or benefits of Relevant Personnel unless the offer is part of a company-wide increase in compensation or benefits granted that was announced prior to May 1, 2020, or has been approved by the United States, in its sole discretion. Defendants' obligations under this Paragraph I.4. will expire after the Recruitment Period.

5.     For Relevant Personnel who elect employment with Acquirer during the Recruitment Period, Defendants must waive all non-compete and non-disclosure agreements; vest and pay to the Relevant Personnel (or to Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits, or other compensation fully or partially accrued at the time of the transfer of the employee to Acquirer; vest any unvested pension and other equity rights; and provide all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.      Acquirer's right to hire Relevant Personnel under Paragraph IV.I. lasts throughout the duration of the Recruitment Period.

7.      For a period of one year from the date on which the Divestiture Assets are divested to Acquirer, Defendants may not solicit to rehire Relevant Personnel who were hired by Acquirer during the Recruitment Period, unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to rehire that individual. Nothing in this Paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements and rehiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

J.      Defendants must warrant to Acquirer that (1) the Divestiture Assets will be operational and without material defect on the date of their transfer to Acquirer; (2) there are no material defects in any permits pertaining to the operation of the Divestiture Assets; and (3) Defendants have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to any permits pertaining to the operation of the Divestiture Assets.

K.      Defendants must make best efforts to assist Acquirer to obtain all necessary licenses, registrations, and permits to operate the Divestiture Assets. Until Acquirer obtains the necessary licenses, registrations, and permits, Defendants must provide Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

L.      Defendants must make best efforts to transition customers from the Health Plan Holdings operating platform to Acquirer's operating platform beginning July 1, 2021, and ending by December 31, 2021.

M.    At the option of Acquirer, and subject to approval by the United States, in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, Defendants must enter into one or more agreements to provide transition services for a period ending no later than December 31, 2021, or, if Acquirer is not United, for a period of one year from the date of divestiture, on terms and conditions reasonably related to market conditions and must fully perform the duties and obligations of such agreements. The transition services to be provided by Defendants to Acquirer under such agreements must encompass all services necessary for the Acquirer to operate the Divestiture Assets, including: (1) providing the operational platform and systems infrastructure to run the Divestiture Assets, including appropriate hardware and software; (2) preparing regulatory plan submissions, including filing and securing regulatory approval, for product, rate, and other required submissions; (3) handling member services and enrollment, the processing and administration of claims, routine investigations, and member appeals and grievances; (4) providing and preparing claims reports; (5) performing accounting and billing, finance support, and payment integrity maintenance; (6) providing care management services; (7) providing regulatory compliance; (8) processing vendor costs; (9) providing benefits configuration; (10) providing broker and employer services; (11) handling provider services and appeals; (12) processing provider demographic, contract, and fee schedules updates; (13) maintaining coordination of benefits programs; (14) providing underwriting support services; and (15) making personnel available to assist Acquirer with operational questions and issues. Any amendments to or modifications of any provision of a transition services agreement are subject to approval by the United States, in its sole discretion. Acquirer may terminate a transition services agreement, or any portion of a transition services agreement, without cost or penalty at any time upon commercially reasonable notice. The

employee(s) of Defendants tasked with providing transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants, unless such sharing is for the sole purpose of providing transition services to Acquirer.

N.      At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, Defendants must enter into one or more agreements to provide Run-out Services to Acquirer from the date of each customer's transition to Acquirer's operating platform to June 30, 2022. At Acquirer's option, after written notice to the United States, Defendants must extend any contract for Run-out Services for a total of up to an additional 90 days. Defendants must provide Run-out Services on terms and conditions reasonably related to market conditions. Any amendments to or modifications of any provision of a Run-out Services agreement are subject to approval by the United States, in its sole discretion. Acquirer may terminate a Run-out Services agreement, or any portion of a Run-out Services agreement, without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with providing Run-out Services must not share any competitively sensitive information of Acquirer with any other employee of Defendants, unless such sharing is for the sole purpose of providing Run-out Services to Acquirer.

O.      Except for Healthcare Provider Contracts, Defendants must make any required notifications and use best efforts to obtain all necessary consents of the contracting party to the change of control of Tufts Health Freedom Plan to Acquirer. Defendants must not interfere with any negotiations between Acquirer and a contracting party.

P.      Defendants warrant that as of the date on which the Divestiture Assets are divested to Acquirer, the Granite Healthcare Provider Contracts have not expired or terminated,

will run through at least December 31, 2021, and will be on the same rates and terms that were in effect as of October 1, 2020, except for any increase in rates that is (a) no greater than a rate increase imposed on Health Plan Holdings between October 1, 2020 and April 1, 2021, and (b) reasonably related to market conditions.

Q.     Defendants must make best efforts and must cooperate with and assist Acquirer to ensure that Acquirer will retain all of the Healthcare Provider Contracts. Best efforts includes the following:

1.     For Healthcare Provider Contracts with Tufts Health Freedom Plan's fifteen largest healthcare providers in New Hampshire, as measured by Tufts Health Freedom Plan's 2019 claims volume, that do not require notification of a change in ownership or control of Tufts Health Freedom Plan, Defendants must ensure that as of the date on which the Divestiture Assets are divested to Acquirer, the contracts have not expired or terminated and include the same rates and terms that were in effect as of October 1, 2020, except for any increase in rates that is (a) no greater than a rate increase imposed on Health Plan Holdings between October 1, 2020 and April 1, 2021, and (b) reasonably related to market conditions.

2.     For all Healthcare Provider Contracts that require a provider's consent to a change in ownership or control of Tufts Health Freedom Plan, or that allow a provider to terminate the contract upon notice of a change in ownership or control, Defendants must notify each such provider of the change in ownership or control within 30 calendar days of entering into an agreement to divest the Divestiture Assets to Acquirer. Except for Healthcare Provider Contracts for which the time to exercise any termination rights has expired without the provider terminating the contract or giving Defendants written notice of an intent to terminate, Defendants must use best efforts to obtain any necessary consent to a change in ownership or control or

13

written acknowledgment that a provider will not terminate because of a change in ownership or control.

   3. For any Healthcare Provider Contract that is terminated or for which a provider gives written notice of its intent to terminate within 90 days from the date on which the Divestiture Assets are divested to Acquirer, at Acquirer's request, Defendants must assist Acquirer to secure a new contract with that provider as expeditiously as possible by sharing information with Acquirer concerning the history of the provider's participation in the Tufts Health Freedom Plan, including the performance of the contract and any material disputes relating to the contract, and assisting Acquirer in developing strategies to retain or bring the provider in-network and on the same rates and terms that were in effect as of October 1, 2020, except for any increase in rates that is (a) no greater than a rate increase imposed on Health Plan Holdings between October 1, 2020 and April 1, 2021, and (b) reasonably related to market conditions.

   4. If a provider terminates or gives written notice of its intent to terminate any Healthcare Provider Contract within 90 days from the date on which the Divestiture Assets are divested to Acquirer and Acquirer is unable to secure a contract with the provider before the contract terminates, and either (1) the provider is one of Tufts Health Freedom Plan's fifteen largest healthcare providers in New Hampshire, as measured by Tufts Health Freedom Plan's 2019 claims volume, or (2) the termination would result in Tufts Health Freedom Plan not meeting provider network adequacy standards required by applicable law or regulation, at Acquirer's request, Defendants must, to the full extent permitted by the terms of Defendants' provider contracts, immediately enter into a rental, lease, or similar contract to provide Acquirer with in-network access to the relevant healthcare provider(s) for a period of 12 months from the

date on which the Divestiture Assets are divested to Acquirer. Defendants may charge Acquirer

no more than Defendants' costs paid to the relevant healthcare provider(s), without adding any

mark-up, for the provision of such rental, lease, or similar contract.

    5. For all Healthcare Provider Contracts that will expire between the filing of

the Complaint in this matter and 90 days after the date on which the Divestiture Assets are

divested to Acquirer, Defendants must use best efforts to expeditiously renew each contract to

avoid a termination and out-of-network status for that provider, on the same rates and terms that

were in effect as of October 1, 2020, except for any increase in rates that is (a) no greater than a

rate increase imposed on Health Plan Holdings between October 1, 2020 and April 1, 2021, and

(b) reasonably related to market conditions.

    R. From the date on which the Divestiture Assets are divested to Acquirer through

December 31, 2021, Defendants must not sell any commercial health insurance products in New

Hampshire that use the "Tufts Health" or "Tufts Health Plan" brand(s) (and all associated

trademarks, service marks, and service names). This Paragraph does not prohibit Defendants

from using the "Tufts Health" or "Tufts Health Plan" brand(s) for group retiree plans, Medicaid

plans, or Medicare plans in New Hampshire.

    S. Beginning on the date on which the Divestiture Assets are divested to Acquirer,

Defendants must not use the terms "Health Freedom Plan(s)," "Freedom," and/or "Freedom

Plan(s)" for any business name or to identify, market, or promote any products or services in

New Hampshire.

    T. If any term of an agreement between Defendants and Acquirer to effectuate the

divestiture required by this Final Judgment varies from a term of this Final Judgment, to the

extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

### V.    APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If Defendants have not divested the Divestiture Assets within the period specified in Paragraphs IV.A. and IV.B., Defendants must immediately notify Plaintiffs of that fact in writing. Upon application of the United States, the Court will appoint a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell the Divestiture Assets. The divestiture trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, after consultation with the State of New Hampshire, at a price and on terms as are then obtainable upon reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.      Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in writing to Plaintiffs and the divestiture trustee within ten calendar days after the divestiture trustee has provided the notice of proposed divestiture required under Section VI.

D.      The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, that are approved by the United States.

E.     The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties. These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including terms and conditions governing confidentiality requirements and conflict-of-interest certifications, that are approved by the United States.

F.     The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the United States may, in its sole discretion, take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

G.     The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the date of the sale of the Divestiture Assets, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants and the trust will then be terminated.

H. Defendants must use their best efforts to assist the divestiture trustee to accomplish the required divestiture. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants may not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture.

I. The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with Plaintiffs setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact with any such person.

J. If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within six months of appointment, the divestiture trustee must promptly provide Plaintiffs with a report setting forth:  (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestiture has not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestiture. Following receipt of that report, the United States may make additional recommendations consistent with the purpose of the trust to the Court. The Court

18

thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final

Judgment, which may include extending the trust and the term of the divestiture trustee's

appointment by a period requested by the United States.

K.      The divestiture trustee will serve until divestiture of all Divestiture Assets is

completed or for a term otherwise ordered by the Court.

L.      If the United States determines that the divestiture trustee is not acting diligently

or in a reasonably cost-effective manner, the United States may recommend that the Court

appoint a substitute divestiture trustee.

## VI.    NOTICE OF PROPOSED DIVESTITURE

A.      Within two business days following execution of a definitive divestiture

agreement with a proposed Acquirer other than United, Defendants or the divestiture trustee,

whichever is then responsible for effecting the divestiture, must notify Plaintiffs of a proposed

divestiture required by this Final Judgment. If the divestiture trustee is responsible for

completing the divestiture, the divestiture trustee also must notify Defendants. The notice must

set forth the details of the proposed divestiture and list the name, address, and telephone number

of each person not previously identified who offered or expressed an interest in or desire to

acquire any ownership interest in the Divestiture Assets.

B.      Within 15 calendar days of receipt by the United States of this notice, the United

States, in its sole discretion, may request from Defendants, the proposed Acquirer, other third

parties, or the divestiture trustee additional information concerning the proposed divestiture, the

proposed Acquirer, and other prospective Acquirers. Defendants and the divestiture trustee must

furnish the additional information requested within 15 calendar days of the receipt of the request

unless the United States provides written agreement to a different period.

C. Within 45 calendar days after receipt of the notice required by Paragraph VI.A. or within 20 calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B., whichever is later, the United States will provide written notice to Defendants and any divestiture trustee that states whether or not the United States, in its sole discretion, after consultation with the State of New Hampshire, objects to Acquirer or any other aspect of the proposed divestiture. Without written notice that the United States does not object, a divestiture may not be consummated. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C. of this Final Judgment. Upon objection by Defendants pursuant to Paragraph V.C., a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

D. No information or documents obtained pursuant to this Section VI may be divulged by Plaintiffs to any person other than an authorized representative of the executive branch of the United States or an authorized representative of the State of New Hampshire, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

E. In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of

confidentiality expire ten years after submission, "unless the submitter requests and provides

justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

F.      If at the time that a person furnishes information or documents to the United

States or the State of New Hampshire pursuant to this Section VI, that person represents and

identifies in writing information or documents for which a claim of protection may be asserted

under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page

of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of

Civil Procedure," the United States and the State of New Hampshire must give that person ten

calendar days' notice before divulging the material in any legal proceeding (other than a grand-

jury proceeding).

## VII.      FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the

Divestiture Assets made pursuant this Final Judgment.

## VIII.      ASSET PRESERVATION OBLIGATIONS

Until the divestiture required by this Final Judgment has been accomplished, Defendants

must take all steps necessary to comply with the Stipulation and Order entered by the Court.

Defendants must take no action that would jeopardize the divestiture ordered by the Court.

## IX.      AFFIDAVITS

A.      Within 20 calendar days of the filing of the Complaint in this matter, and every 30

calendar days thereafter until the divestiture required by this Final Judgment has been completed,

Defendant Health Plan Holdings must deliver to Plaintiffs an affidavit, signed by its Chief

Financial Officer and Chief Legal Officer, describing the fact and manner of Defendants'

compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

B.      Each affidavit must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the United States to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit.

C.      Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the divestiture has been completed.

D.      Within 20 calendar days of the filing of the Complaint in this matter, Defendant Health Plan Holdings also must deliver to Plaintiffs an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

E.      If Defendants make any changes to the efforts and actions outlined in any earlier affidavits provided pursuant to Paragraph IX.D., Defendants must, within 15 calendar days after any change is implemented, deliver to Plaintiffs an affidavit describing those changes.

F.     Defendants must keep all records of any efforts made to preserve the Divestiture Assets until one year after the divestiture has been completed.

## X.     COMPLIANCE INSPECTION

A.     For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.     to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

2.     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.     Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.     No information or documents obtained by the United States pursuant to this Section X may be divulged by Plaintiffs to any person other than an authorized representative of

the executive branch of the United States or an authorized representative of the State of New Hampshire, except in the course of legal proceedings to which the United States is a party, including grand jury proceedings, for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." See 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States pursuant to this Section X, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendants ten calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XI.    NO REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment.

## XII.    RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in a civil contempt action, a motion to show cause, or a similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.    This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition Plaintiffs alleged was harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.    In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension

of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

   D. For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIII.

**XIV. EXPIRATION OF FINAL JUDGMENT**

   Unless the Court grants an extension, this Final Judgment will expire ten years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants the divestiture has been completed and that the continuation of this Final Judgment is no longer necessary or in the public interest.

**XV. PUBLIC INTEREST DETERMINATION**

   Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement,

26

public comments thereon, and the United States' response to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: ___3/22/2021_____

[Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16]

           _/s/ Joseph A. DiClerico, Jr.
           Joseph A. DiClerico, Jr.
           United States District Judge